# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**525**

**CA 15-01717**

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, DEJOSEPH, AND NEMOYER, JJ.

---

IN THE MATTER OF ARBITRATION BETWEEN CITY
OF LOCKPORT, PETITIONER-APPELLANT,

AND                                                        MEMORANDUM AND ORDER

LOCKPORT PROFESSIONAL FIREFIGHTERS
ASSOCIATION, INC., RESPONDENT-RESPONDENT.

---

GOLDBERGER AND KREMER, ALBANY (BRIAN S. KREMER OF COUNSEL), FOR
PETITIONER-APPELLANT.

THE SAMMARCO LAW FIRM, LLP, BUFFALO (ANDREA L. SAMMARCO OF COUNSEL),
FOR RESPONDENT-RESPONDENT.

---

Appeal from an order of the Supreme Court, Niagara County (Frank Caruso, J.), entered December 22, 2014 in a proceeding pursuant to CPLR article 75. The order denied the petition for a stay of arbitration and granted the cross motion of respondent to compel arbitration.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: Respondent is the exclusive bargaining representative for all firefighters employed by petitioner, except for the fire chief. Pursuant to the parties' collective bargaining agreement (CBA), petitioner agreed, among other things, that it would "staff all equipment with adequate firefighters to assure that any evolutions [that] the firefighters are called upon to perform can be conducted with enough firefighters to assure the safety of the staff performing the evolution." Another provision of the CBA provided that petitioner was permitted to transfer dispatch communication duties out of the fire department and, in exchange, the parties agreed that petitioner would thereafter be entitled to maintain a minimum staffing level of nine firefighters per shift, which was one less than the minimum level set forth in a prior arbitration award (hereafter, staffing provision). The staffing provision further provided that "nothing contained herein shall prohibit [petitioner], subject to the terms of the parties' agreements and applicable law, from adjusting staffing levels to account for changes in population, technology, apparatus, or other relevant circumstances," and that the parties would "meet cooperatively for the purpose of discussing issues relating to firefighter and public safety issues[,] and logistical issues[,] associated with the transfer of dispatch duties."

Petitioner's Board of Fire Commissioners subsequently voted to remove an ambulance from service and to reduce the minimum staffing level to seven firefighters per shift, and such operational changes were then implemented by the fire chief.  Respondent filed a grievance pursuant to the procedures set forth in the CBA and thereafter demanded arbitration seeking a determination that petitioner violated the CBA and restoration of the minimum staffing level to nine firefighters per shift.  Petitioner commenced this proceeding pursuant to CPLR article 75 seeking a permanent stay of arbitration.  Supreme Court denied the petition, and granted the "cross-motion" of respondent to dismiss the petition and compel arbitration.  We affirm.

"It is well settled that, in deciding an application to stay or compel arbitration under CPLR 7503, the court is concerned only with the threshold determination of arbitrability, and not with the merits of the underlying claim" (*Matter of Alden Cent. Sch. Dist. [Alden Cent. Schs. Administrators' Assn.]*, 115 AD3d 1340, 1340; *see* CPLR 7501; *Matter of Board of Educ. of Watertown City Sch. Dist. [Watertown Educ. Assn.]*, 93 NY2d 132, 142-143).  In making that determination, the court must conduct a two-part analysis.  First, the court must determine whether "there is any statutory, constitutional or public policy prohibition against arbitration of the grievance" (*Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273, 278).  Second, "[i]f no prohibition exists, [the court then determines] whether the parties in fact agreed to arbitrate the particular dispute by examining their collective bargaining agreement" (*Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513, 519; *see Matter of Mariano v Town of Orchard Park*, 92 AD3d 1232, 1233).

With respect to the first part of the analysis, petitioner contends that the staffing provision of the CBA constitutes a job security provision that is not arbitrable on public policy grounds because it is not explicit, unambiguous, and comprehensive (*see Matter of Johnson City Professional Firefighters Local 921 [Village of Johnson City]*, 18 NY3d 32, 37, *rearg denied* 18 NY3d 937).  We reject that contention.  "This State has a strong public policy favoring arbitration of public sector labor disputes . . . , and 'judicial intervention on public policy grounds constitutes a narrow exception to the otherwise broad power of parties to agree to arbitrate all of the disputes arising out of their juridical relationships' " (*Matter of City of Lockport [Lockport Professional Firefighters Assn., Inc.]*, 133 AD3d 1358, 1359-1360, quoting *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 6-7; *see Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City Sch. Dist. of City of N.Y.*, 1 NY3d 72, 80).  Consistent with those principles is the general approach employed in arbitration cases, namely, that "any doubts as to whether [an] issue is arbitrable will be resolved in favor of arbitration" (*Matter of BRG Sports, LLC v Zimmerman*, 127 AD3d 499, 499; *see State of New York v Philip Morris Inc.*, 30 AD3d 26, 31, *affd* 8 NY3d 574).  Here, contrary to petitioner's contention, we conclude that the court did not err in

determining that the staffing provision constituted a safety provision, i.e., a condition of employment, rather than a job security provision that could be subject to the public policy exception to arbitration.  "A job security provision insures that, at least for the duration of the agreement, the employee need not fear being put out of a job" (*Matter of Board of Educ. of Yonkers City Sch. Dist. v Yonkers Fedn. of Teachers*, 40 NY2d 268, 275).  Unlike a job security provision containing a "no-layoff clause," the staffing provision here does not purport to guarantee a firefighter his or her employment while the CBA is in effect (*cf. Johnson City Professional Firefighters Local 921*, 18 NY3d at 36-38; *Board of Educ. of Yonkers City Sch. Dist.*, 40 NY2d at 272).  Further, contrary to petitioner's contention, the staffing provision does not operate to mandate a total number of firefighters that must be employed, nor does its stated intent relate to job protection; rather, the staffing provision relates solely to the minimum number of firefighters required to be present for each shift (*cf. Matter of Burke v Bowen*, 40 NY2d 264, 266-267).  The record establishes that in drafting and agreeing to the staffing provision, the parties expressly sought to ensure firefighter and public safety associated with the transfer of dispatch communication duties that allowed for the reduction in the minimum per shift staffing level.  We thus conclude that the court properly determined that the staffing provision is not a job security provision, and therefore not subject to analysis under the narrow public policy exception to arbitration.

With respect to the second part of the analysis, it is undisputed that the parties agreed to arbitrate all grievances arising from the CBA.  Whether the reduction of the minimum staffing level to seven firefighters per shift based on the removal of an ambulance from service constitutes a violation of the CBA goes to the merits of the grievance itself, not to its arbitrability, and it is therefore a matter for the arbitrator to resolve (*see Matter of Village of Horseheads [Horseheads Police Benevolent Assn., Inc.]*, 94 AD3d 1191, 1192-1193, *lv denied* 19 NY3d 899).

Entered:  July 1, 2016                         Frances E. Cafarell
                                               Clerk of the Court